IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OLUS R. LEHMAN, | ) | CASE NO. 5:11 CV 14 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by Olus R. Lehman

seeking judicial review of a decision by the Commissioner of Social Security denying

Lehman's applications for disability insurance benefits and supplemental security income.[2]

After the Commissioner filed an answer[3] and the administrative record,[4] the parties briefed

their positions.[5]

---

[1] The parties have consented to my exercise of jurisdiction.  ECF # 12.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 14 (Lehman's fact sheet); ECF # 16 (Lehman's brief); ECF # 18 (Commissioner's brief and chart).  Oral argument was also scheduled in this matter.  ECF # 19.  However, upon review of the file, I have determined in this matter that the scheduled argument is not needed.  Should either party believe to the contrary after reviewing this decision, such party may move to alter or amend the judgment and request a hearing.

For the reasons that follow, I will find that the Commissioner's decision is supported by substantial evidence.

## Facts

### A.      Findings and decision of the Administrative Law Judge

Lehman, who was age 49 at the time of the hearing,[6] had completed the 11th grade in special education classes and had previously worked in as a laborer in various places.[7] The Administrative Law Judge ("ALJ"), whose decision became the decision of the Commissioner, found that Lehman had the following severe impairments: affective disorder and borderline intellectual functioning.[8]

The ALJ further found that Lehman's mental impairments did not meet or equal the listings at 12.04 or 12.05.[9] Specifically, as to the mental retardation listing at 12.05, the ALJ decided that Lehman did not meet the listing because: (1) there was no mental incapacity evidenced by dependency on others for personal needs (paragraph A); (2) there was no valid verbal, performance or full scale IQ of 59 or less; and (3) Lehman did not have a valid IQ

---

[6] ECF # 13 at 1.

[7] *Id.* (citing transcript ("Tr.")).

[8] Tr. at 13.

[9] *Id*. at 13-14.

-2-

score between 60 and 70 and "a physical or other mental impairment imposing an additional and significant work-related limitation of function."[10]

The ALJ determined that Lehman had the residual functional capacity (RFC) to "perform a full range of work at all exertional levels but with the following nonexertional limitations:  He is moderately limited in his ability to understand, remember, and carry out detailed instructions, to maintain social functioning, and to maintain concentration, persistence and pace."[11]  With this finding, she then determined that Lehman could not do his past relevant work.[12]  But, based on the testimony of a vocational expert ("VE"), the ALJ found that Lehman was capable of making a successful adjustment and could perform a significant number of jobs in the local and national economy and so was not disabled.[13]

**B.     Issues on judicial review**

Lehman presents two issues on judicial review:

1.      Does substantial evidence support the finding that Lehman did not meet or equal the listing for §12.05?

2.      Does substantial evidence support the RFC determination?

---

[10] *Id*. at 14.

[11] *Id*.

[12] *Id*. at 19.

[13] *Id*. at 19-20.

# Analysis

## A.      Standard of review

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[14]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[15]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[16]

---

[14] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[15] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[16] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.    Applications of standard**

**1.    Substantial evidence supports the finding that Lehman did not meet or equal the listing for § 12.05.**

Under the listing at § 12.05, mental retardation is defined in pertinent part as follows:

12.05 Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifest during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

(C)     A valid verbal, performance, or full scale IQ of 60 through 70 **and** a physical or other mental impairment imposing an additional and significant work-related limitation of function.[17]

Here, as noted, Lehman argues first that he has valid IQ scores between 60 and 70. Further, he contends that his limitation of function is established by:  (a) not graduating from school; (b) his inability to sustain employment at any given employer; and (c) his living as a homeless person for most of the years following his mother's death.[18]  In addition, he claims that other mental disorders – depression, dysthymic disorder, avoidant personality disorder, psychotic disorder, and panic disorder – also constitute "additional and significant

---

[17] 20 C.F.R. § 404, Subpt. P., App.1, § 12.05 (emphasis added).

[18] ECF # 16 at 17.

work-related limitation(s) of function" that, with the IQ score, establish that he meets the listing for § 12.05.[19]

Moreover, Lehman maintains that although the ALJ cited to his IQ scores of 67 (full scale) and 68 (verbal) from a 2007 test, she did not discuss other scores from his childhood.[20] This failure, he contends, "leaves the Court without guidance as to her rationale" for finding that Lehman did not meet the listing.[21]

As concerns the arguments regarding the listing at § 12.05C, I note initially that Lehman correctly states the law that an ALJ must articulate within the opinion why a claimant with an on the record IQ score below 70 does not meet the listing at § 12.05C.[22] However, for the reasons that follow, I will conclude that the ALJ in this instance did conform to that requirement, albeit in form that was less than textbook, and, therefore, that substantial evidence supports the finding that Lehman does not meet this listing.

As noted above, meeting the listing at § 12.05C requires a claimant to establish three things:  (1) the onset of impairment deficits in intellectual functioning before age 22; (2) a valid IQ score between 60 and 70; **and** (3) a physical or other mental impairment imposing

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Stearns ex rel. RS v. Comm'r of Soc. Sec.*, No. 1:09-CV-1390, 2011 WL 1097638 (N.D. Ohio March 22, 2011)*, Warren ex rel. AF v. Comm'r of Soc. Sec.*, No. 3:09-CV-1453, 2011 WL 1085884 (N.D. Ohio March 22, 2011), *Isham v. Astrue*, No. 3:08-CV-423, 2010 WL 1957362 (E.D. Tenn. Jan. 13, 2010).

additional and significant work-related limitations.  Here, as to the first criteria, the record shows that Lehman had a childhood I.Q. score of 65,[23] plus other evidence of deficits in intellectual functioning before age 22.[24]  There is no evidence that the ALJ addressed these scores.  The record further shows, as to the second element, that he has a two adult IQ scores between 60 and 70, which are noted by the ALJ.[25]  As regards the third aspect of meeting the listing – another impairment imposing additional work-related limitations – Lehman argues that there is evidence in the record of such limitations that was not discussed by the ALJ,[26] while the Commissioner contends that such a discussion is found in the ALJ's development of the RFC, wherein she determined that no other condition significantly affected Lehman's ability to perform work activities consistent with the RFC.[27]

Here, the ALJ did actually undertake to consider whether Lehman met the criteria of § 12.05C.[28]  Unlike *Isham*, *Stearns*, or *Warren*, there is no issue here about the ALJ failing to recognize the need to analyze the evidence as to whether Lehman meets the listing at § 12.05.  Rather, the issue in this case is whether the analysis undertaken by the ALJ is sufficient evidence for her conclusion that Lehman did not meet this listing.

---

[23] Tr. at 210.

[24] *Id*. at 191-213.

[25] *Id*. at 16.

[26] ECF # 16 at 17.

[27] Tr. at 13-19.

[28] *Id*. at 18.

In that regard, the ALJ's analysis is less than a model of clarity.  But, as will be explained, it is sufficient for this purpose.

First, as observed earlier, the single sentence conclusion that Lehman did not meet this listing[29] does not acknowledge the predicate element of an onset of the relevant deficits before 22.  Yet, the ALJ does not argue that Lehman failed to establish this threshold fact, and, by proceeding to discuss the next elements of the listing, may properly be understood as accepting that Lehman had met this condition.[30]

Next, although the single sentence addressing § 12.05C is unfortunately subject to different interpretations as to the next two criteria, as witness the arguments here, only one reading is consistent with the opinion as a whole.  Specifically, because the ALJ expressly acknowledges at page 16 of the opinion that Lehman does have two valid adult IQ scores of between 60 and 70,[31] the conclusory statement on page 14 that Lehman does not meet the listing because he did not have an IQ between 60 and 70 **and** other impairments imposing

---

[29] *Id*. at 14.

[30] This question of the predicate element is problematic for Lehman on several levels. First, regardless of IQ scores, Lehman must satisfy the diagnostic description for mental retardation to satisfy the listing's requirements.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  No medical source diagnosed Lehman as mentally retarded.  Sources did diagnose him as borderline intellectual functioning.  Tr. at 184-201, 233-38, 258-63, 286-87.  Second, Lehman had a Stanford-Binet IQ score of 65 in 1978.  For purposes of the listing, however, only Wechsler Adult Intelligence Scale scores are acceptable.  *Bilka v. Comm'r of Soc. Sec.*, 252 F. Supp. 2d 472, 474 (N.D. Ohio 2002).  Third, he did have Wechsler Intelligence Scale for Children IQ scores well above 70 in 1971.  There exists, therefore, no evidence of the onset of mental retardation before age 22 that can be considered substantial.  Given the analysis of the other criteria of the listing, I need not resolve the predicate question.

[31] Tr. at 16.

-8-

additional limitations must be read, as the Commissioner argues, in the conjunctive.  So understood, the ALJ did not fail to take note of Lehman's two IQ scores between 60 and 70.

Finally, as to an analysis of the third portion of the standard for meeting the listing – the other impairments imposing additional limitations – the Commissioner's position is persuasive.  The ALJ found only one severe impairment in addition to borderline intellectual functioning – affective disorder.[32]  First, Lehman has here done no more than to refer to this impairment and has not shown that it actually does impose additional work-related limitations beyond those caused by Lehman's borderline intellectual functioning.[33]  Moreover, and more important, the ALJ extensively discusses Lehman's affective disorder and conditions and found that it did not impose additional, significant work-related limitations.[34]  While it might be desirable that the full analysis of Lehman meeting the listing at § 12.05C were set forth in a single, extended passage, it does not then follow that the ALJ's treatment here "leaves the Court without guidance as to her rationale" for finding that Lehman did not meet the listing.[35]  The ALJ addressed all three components of the listing as set forth above, and on that record, substantial evidence exists to support the decision that Lehman did not meet the listing.

---

[32] *Id.* at 13.

[33] *See*, ECF # 18 at 8.

[34] *Id*. (citing transcript).  See the ALJ's discussion of Lehman's anxiety and depression at 18-19.

[35] ECF # 16 at 17.

**2.      Substantial evidence supports the RFC finding and the VE's conclusion.**

Here, Lehman raises several arguments:  (1) the RFC posed at the hearing was based on a worksheet, not the state's RFC determination;[36] (2) the RFC as written differed from the hypothetical RFC posed to the VE;[37] (3) the VE gave different answers to two essentially similar hypothetical questions;[38] and (4) the ALJ should not have rejected opinions from various sources in formulating the RFC.[39]

As to the first three arguments, all concerning purported deficiencies in the ALJ's posing of the RFC hypothetical at the hearing, I note initially, as does the Commissioner, that Lehman has not specified what the alleged differences are between the RFC as determined by the ALJ and set forth in the opinion and the RFC as posed to the VE.  Without a developed argument, issues merely alluded to in a perfunctory manner are deemed waived.[40] In addition, although Lehman asserts that the VE gave different answers in response to two hypothetical questions that were "quite similar,"[41] in fact, as noted by the Commissioner, the

---

[36] *Id*. at 18.

[37] *Id*.

[38] *Id*.

[39] *Id*. at 18-19.

[40] *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

[41] ECF # 16 at 18.

two questions were clearly different and so appropriately created the basis for different answers.[42]

Finally, as to Lehman's fourth argument – that the ALJ's RFC finding should have included limitations based on testimony from various sources – Lehman here simply asks this Court to re-examine the evidence *de novo* and to come to a different conclusion than did the ALJ. Again, as the Commissioner points out, although some evidence of record might support the claimant's position, the Commissioner's decision will not be disturbed if it is supported by substantial evidence.[43] Here, the limitations Lehman contends the ALJ should have included in the RFC were: (1) not supported by the treatment notes of the facility where Lehman was treated;[44] (2) largely based on Lehman's self-reporting of symptoms, which the ALJ found not fully credible;[45] and (3) inconsistent with evidence that showed Lehman could manage the symptoms while receiving medication.[46]

Accordingly, on this record and under the applicable standard, substantial evidence supports the RFC finding and the VE's conclusion.

---

[42] *See*, ECF # 18 at 11 (citing Tr.).

[43] *Id*. at 14 (citing *Buxton*, 246 F.3d at 772-73).

[44] *Id*. at 12-13 (citing and quoting Tr.).

[45] *Id*. at 13-14 (citing Tr.).

[46] *Id.* at 14 (citing Tr.).

## Conclusion

For the foregoing reasons, I find that the decision of the Commissioner in this matter is supported by substantial evidence and is, therefore, affirmed.

IT IS SO ORDERED.


Dated:   March 30, 2012                           s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge